**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHAD MICHAEL RODGERS, ET AL.**                 **CIVIL ACTION**

**VERSUS**                                        **NO. 24-2560**

**BOARD OF COMMISSIONERS FOR THE**               **SECTION: D (1)**
**LAFITTE AREA INDEPENDENT**
**LEVEE DISTRICT**

<u>**ORDER AND REASONS**</u>

Before the Court is a Motion to Dismiss Complaint, filed by Defendant Board of Commissioners for the Lafitte Area Independent Levee District ("LAILD").[1] Chad Michael Rogers, Jr., Christina Rogers, C&C Rogers Rentals, LLP, and Nathan James Rogers, LLC ("Plaintiffs") have filed an Opposition,[2] and LAILD has filed a Reply.[3] After a careful review of the parties' memoranda, the record, and the applicable law, the Court **DENIES** Defendant's Motion to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an alleged taking of real property within the bounds of the Lafitte Area Independent Levee District in Jefferson Parish, Louisiana.[4] Plaintiffs own various pieces of property located on Jean Lafitte Boulevard in Lafitte, Louisiana.[5] In October 2023, LAILD, without providing any formal notice, resolution, or initiating any expropriation proceedings, entered Plaintiffs' land and began excavating and moving rocks, dirt, and soil as a part of larger levee protection

---

[1] R. Doc. 17.
[2] R. Doc. 18.
[3] R. Doc. 21.
[4] R. Doc. 1.
[5] *Id.* at p. 2.

project.[6] LAILD also conducted construction activities on Plaintiffs' property, such as pile-driving and the building of staging areas for its equipment and materials.[7] Plaintiffs allege that their private roadways, docks, landing facilities, and commercial shrimp loading facilities were damaged as a result of LAILD's activities.[8] On October 25, 2024, Plaintiffs filed suit in this Court seeking just compensation under both the United States and Louisiana Constitutions and a declaratory judgment that LAILD deprived them of their property rights and that LAILD has no right of appropriation to their land.[9]

Thereafter, LAILD filed the instant Motion to Dismiss Complaint on April 11, 2025.[10] LAILD asserts that this Court lacks subject matter jurisdiction over the underlying suit pursuant to the doctrine of sovereign immunity under the Eleventh Amendment.[11] LAILD specifically maintains that because it is arm of the state of Louisiana who has "respectfully decline[d] to waive its sovereign immunity[,]" it is thereby entitled to sovereign immunity.[12] Thus, since sovereign immunity "bars suits by private citizens against a state in federal court, irrespective of the nature of the relief requested[,]"[13] LAILD posits that "this Court lacks subject matter jurisdiction over any claims for damages against the State defendant, and as such, these claims should be dismissed."[14]

---

[6] *Id.* at p. 3.
[7] *Id.* at p. 4.
[8] *Id.*
[9] *Id.* at pp. 11–12.
[10] R. Doc. 17.
[11] R. Doc. 17-1 at p. 3.
[12] *Id.* at p. 4; R. Doc. 21.
[13] R. Doc. 17-1 at p. 4 (internal quotation marks omitted).
[14] *Id.* at p. 5.

In Opposition, Plaintiffs contend that LAILD is not an arm of the state of Louisiana and thus is not entitled to sovereign immunity under the Eleventh Amendment.[15] Plaintiffs specifically claim that, when applying the Fifth Circuit's six-factor analysis in *Vogt v. Board of Commissioners of Orleans Levee*[16] to determine whether a levee board is an arm of the state enjoying sovereign immunity, it is clear that LAILD is not an arm of the state entitled to sovereign immunity.[17]  As a final point, Plaintiffs highlight that numerous courts within the Fifth Circuit have repeatedly held that levee boards are not entitled to sovereign immunity under the Eleventh Amendment.[18] Thus, according to Plaintiffs, LAILD's Motion should be denied.[19]

LAILD, in Reply, maintains that when the *Vogt* factors are applied to the instant dispute, a different outcome in warranted.[20] LAILD specifically asserts that:

> Unlike the Orleans Levee District in [*Vogt*], Laffite often attempts to secure significant funding from state and federal programs aimed at flood risk reduction. These may include, but are not limited to, the Louisiana Watershed Initiative, the Federal Emergency Management Agency, and the Coastal Restoration and Protection Authority (CPRA).

> Also unlike Orleans in *Vogt*, which appeared to have diversified funding, Lafitte appears to receive substantial funding from state and federal sources. Any judgments against Lafitte could indirectly implicate the state treasury.

> Specifically, Laffite utilizes funding from the CPRA as part of a collaborative and broader effort to enhance flood protection and coastal resilience in the Lafitte area. One of these projects is the Rosethorne

---

[15] R. Doc. 18 at pp. 4–9.
[16] 294 F.3d 684 (5th Cir. 2002).
[17] R. Doc. 18 at pp. 5–7.
[18] *Id.* at pp. 7–9.
[19] *Id.* at p. 9.
[20] R. Doc. 21.

Tidal Protection Project. This project is a partnership between CPRA, Lafitte, and the Louisiana Department of Transportation (DOTD). Surplus funds from CPRA and DOTD, as well as Gulf of Mexico Security Act (GOMESA) and state capital outlay funds have been allocated for the project.

An additional project being funded through federal and state funds is the Lower Lafitte Basin Tidal Surge Project. Like Rosethorne, this project is being funded through a combination of a state surplus, state capital outlay, and statewide flood control funds from CPRA and DOTD.[21]

Thus, according to LAILD, a substantial portion of its funding comes from the state of Louisiana, thereby supporting the finding that LAILD is an arm of the state entitled to sovereign immunity under the Eleventh Amendment.[22]

## II.    LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case.[23]  A case is properly dismissed pursuant to Rule 12(b)(1) "for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[24]   In considering a challenge to subject matter jurisdiction under Rule 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'"[25]  Thus, a motion to dismiss for lack of jurisdiction may be decided by the Court based on: (1) the complaint alone; (2) the complaint and the undisputed facts in the

---

[21] *Id.* at pp. 2–3.
[22] *Id.*
[23] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).
[24] *Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 494 (5th Cir. 2005) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998)).
[25] *Krim*, 402 F.3d at 494 (quoting *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).

record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.[26] The party asserting jurisdiction carries the burden of proof when facing a Rule 12(b)(1) motion to dismiss.[27] A motion to dismiss under 12(b)(1) should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[28]

## III.    ANALYSIS

LAILD asserts that this case should be dismissed because it is entitled to sovereign immunity under the Eleventh Amendment as an arm of the state.[29] LAILD posits that since it derives a significant portion of its funding from the state of Louisiana, a suit against LAILD is essentially a suit against the state itself.[30] Plaintiffs, in contrast, argue that Fifth Circuit jurisprudence is clear that levee boards are not arms of the state and are thus not entitled to Eleventh Amendment immunity.[31] For the reasons set forth below, the Court finds that LAILD is not an arm of the state entitled to sovereign immunity under the Eleventh Amendment.

### A.  LAILD is Not Entitled to Eleventh Amendment Immunity.

As an initial matter, the Court has recently ruled on a nearly identical motion brought by LAILD in a "companion case," in which the Court determined that LAILD

---

[26] *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)) (internal quotation marks omitted).
[27] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming*, 281 F.3d at 161).
[28] *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).
[29] R. Doc. 21.
[30] *Id.* at pp. 2–3.
[31] R. Doc. 18.

is not an arm of the state entitled to sovereign immunity under the Eleventh Amendment.[32] Appropriately, the Court undergoes an independent analysis below.[33]

> The Eleventh Amendment provides that:
>
> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[34]

While broadly forming the constitutional basis for sovereign immunity, the Eleventh Amendment explicitly prohibits federal courts from hearing suits against a state that does not consent to be sued in federal court.[35] Sovereign immunity under the Eleventh Amendment "deprives a federal court of jurisdiction to hear a suit against a state."[36] Eleventh Amendment immunity extends to state agencies and entities that are found to be "alter egos" or "arms" of the state.[37] The Fifth Circuit has held that if the entity is found to be so closely related to the state that "the state is the real, substantial party in interest," then the Eleventh Amendment will bar the federal action.[38] Eleventh Amendment sovereign immunity, however, does not apply to entities that possess "'an identity sufficiently distinct' from that of the State."[39]

---

[32] *See CMP, LLC v. Board of Commissioners for Lafitte Area Independent Levee District*, Civil Action No. 24-2298, 2025 WL 3650733, at *4 (E.D. La. Dec. 17, 2025)(Vitter, J.).

[33] *See Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 689 (5th Cir. 2002)(quoting *Earles v. State Board of Certified Public Accountants of Louisiana*, 139 F.3d 1033, 1037 (5th Cir.1998))("There is no bright-line test for determining whether a political entity is an 'arm of the State' for purposes of Eleventh Amendment immunity. Instead, 'the matter is determined by reasoned judgment about whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively against the sovereign state.'").

[34] U.S. CONST. amend. XI.

[35] *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 54 (1996).

[36] *Warnock v. Pecos Cnty., Tex.,* 88 F.3d 341, 343 (5th Cir. 1996).

[37] *Vogt*, 294 F.3d at 688.

[38] *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999).

[39] *Vogt*, 294 F.3d at 689 (quoting *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 344 (5th Cir.1998)).

The Fifth Circuit has eschewed any bright-line test to determine whether a political entity is an "alter ego" or "arm" of the state.[40] Instead, courts in the circuit generally consider six factors:

(1) whether state statutes and case law characterize the agency as an arm of the state;
(2) the source of funds for the entity;
(3) the degree of local autonomy the entity enjoys;
(4) whether the entity is concerned primarily with local, as opposed to statewide, problems;
(5) whether the entity has authority to sue and be sued in its own name; and
(6) whether the entity has the right to hold and use property.[41]

All factors need not be present for an entity to receive sovereign immunity.[42] In the balance of equities, the second factor is most important, while the fifth and sixth factors are weighed significantly less.[43] The Court analyzes each of these factors in turn as it relates to LAILD.

## 1.    Characterization of the Entity

Louisiana law characterizes a levee district as "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees . . . within its territorial limits."[44] When analyzing the nature of levee districts, the Fifth Circuit has suggested that the title of "political subdivision" is mutually exclusive from "arm of the state."[45] Furthermore, political subdivisions are "not part of any department within the executive branch of government."[46] LAILD

---

[40] *Vogt*, 294 F.3d at 689.
[41] *Id*.
[42] *Hudson*, 174 F.3d at 682.
[43] *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002).
[44] La. R.S. § 38:281.
[45] *Cozzo*, 279 F.3d at 281–82.
[46] *Vogt*, 294 F.3d at 692.

seemingly suggests that it is a political subdivision of the state of Louisiana.[47] Plaintiffs contend that the Louisiana Constitution and state law classify levee districts as "political subdivisions."[48] Regardless, as a matter of law, levee districts do not constitute part of the state executive branch and appear to be distinct from an arm of the state.[49] As a result, the first factor weighs against Eleventh Amendment sovereign immunity from suit.

### 2.    Source of Funds

The next factor to be considered is the source of LAILD's funding.  Plaintiffs rely on *Vogt*, which addressed the Orleans Parish Levee District, to argue that such factor favors a finding of no sovereign immunity.[50] Plaintiffs also contend that "nothing in Louisiana law, or in recent practice, suggests that the State has any obligation with respect to judgments against the levee district."[51] LAILD disagrees with Plaintiffs' reliance on *Vogt*, arguing that, unlike the levee district in that case, LAILD receives substantial funds from state and federal programs and does not have the same independent funding sources that that levee district possessed.[52] Thus, LAILD contends that because it  "appears to receive substantial funding from state and federal sources[,] [a]ny judgments against Lafitte could indirectly implicate the state treasury."[53]

---

[47] R. Doc. 17-1 at p. 4; R. Doc. 21 at p. 2.
[48] R. Doc. 18 at p. 5.
[49] *See Vogt*, 294 F.3d at 692.
[50] R. Doc. 18 at pp. 5–6.
[51] *Id*. at p. 6.
[52] R. Doc. 21 at pp. 2–3.
[53] *Id*. at p. 3.

When examining this factor, the Fifth Circuit has instructed that courts should examine, first, what is "the state's liability in the event there is a judgment against the defendant" and second, what is the state's liability for the defendant's general debts and obligations.[54] Regarding liability for a judgment, in the event of a judgment against LAILD, the state has no legal liability.[55] The Louisiana Constitution provides that a judgment against a political subdivision, like a levee district, is not "exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered."[56] While the legislature may appropriate funds to pay a judgment against a levee district, "the legislature certainly has no legal obligation to do so."[57]

LAILD argues that it "often attempts to secure significant funding from state and federal programs aimed at flood risk reduction.  These may include, but are not limited to, the Louisiana Watershed Initiative, the Federal Emergency Management Agency, and the Coastal Restoration and Protection Authority (CPRA)."[58] Notedly, those entities include two seemingly state agencies and one federal agency. As discussed above, the source of annual funding is only one portion of the analysis. LAILD has not shown that the state of Louisiana has a duty to pay a judgment on behalf of LAILD, and LAILD has not shown that the state "regularly appropriates

---

[54] *Hudson*, 174 F.3d at 687.
[55] *Vogt*, 294 F.3d at 693.
[56] LA. CONST. art 12, § 10(C).
[57] *Vogt*, 294 F.3d at 693.
[58] R. Doc. 21 at pp. 3–4.

money to pay judgments against the entity."[59] As a result, the Court finds this factor neutral in its analysis of Eleventh Amendment immunity.

### 3.      Degree of Local Autonomy

In examining the degree of local autonomy of a political entity, courts look to the extent of the entity's independent management authority and the independence of the individual commissioners in charge of the entity.[60] The Court takes judicial notice that the Board of Commissioners of the LAILD consists of five members, appointed by the Governor and confirmed by the State Senate.[61] There are various restrictions on who can fill the five seats on the board, including residency requirements, fixed terms of service, and nomination by legislators.[62] LAILD also possesses taxing authority.[63] The restrictions on the appointment of the commissioners and the district's taxing authority demonstrate a degree of independence from the state executive branch.[64] Further, each levee district has the authority to hold property, issue bonds, raise taxes up to a certain rate and make and execute contracts necessary to perform their functions.[65] LAILD advances no argument as to this factor.[66] And Plaintiffs summarily state that "the levee district's considerable degree of local autonomy supports a finding of no Eleventh Amendment

---

[59] *Vogt*, 294 F.3d at 693
[60] *Id.* at 694.
[61] La. R.S. § 38:291 (Y).
[62] *Id.*
[63] La. R.S. § 38:291 (Y)(6).
[64] *See Pendergrass*, 144 F.3d at 347 (holding that residency requirements, fixed term of appointments, local legislative delegation nomination, and senate approval "tug strongly" in the direction of local autonomy).
[65] La. R. S. §§ 38:314, 38:431, 38:401, 38:404, 38:306(A).
[66] *See* R. Docs. 17 & 21.

immunity."[67] Accordingly, the Court finds that the third factor falls against Eleventh Amendment immunity because of the degree of local autonomy that LAILD possesses.

### 4.      Concern with Local or Statewide Problems

When analyzing to what degree a political entity is concerned with primarily local, as opposed to statewide, concerns, courts look to "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants."[68] Generally, the presence of limited territorial boundaries suggests that an entity is not an arm of the state.[69] LAILD does not address whether it acts for the benefit and welfare of the entire state, but it does concede that it "utilizes funding from the CPRA as part of a collaborative and broader effort to enhance flood protection and coastal resilience in the Lafitte area."[70] Plaintiffs contend that the primary concern of the Levee Board is the maintenance of the levee within its district.[71]   Even assuming *arguendo* that the actions of LAILD generate some statewide benefits, its activities are localized, and it possess a specific territorial jurisdiction.[72] As a result, this factor points toward LAILD not being an arm of the state and lacking Eleventh Amendment Immunity.

---

[67] R. Doc. 18 at p. 6.
[68] *Pendergrass*, 144 F.3d at 347 (citing *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 443 (5th Cir. 1985)).
[69] *Vogt*, 294 F.3d at 695.
[70] R. Doc. 21 at p. 3.
[71] R. Doc. 18 at p. 6.
[72] *See Bonin v. Sabine River Auth.*, 65 F.4th 249, 259 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 287, 217 L. Ed. 2d 131 (2023).

### 5.  Authority to Sue and Be Sued

The board of a levee district "may sue and be sued under the style of Board of Commissioners for the respective district."[73] LAILD, again, does not address this factor.[74] Plaintiffs cite Louisiana law as stated above that the Levee Board may sue and be sued.[75] While "the last two factors weigh significantly less in the six factor balance of equities" test to determine whether an entity is an arm of the state, this factor cuts against a claim of Eleventh Amendment immunity.[76]

### 6.  Right to Hold and Use Property

"Each board of commissioners [of a levee district] may buy and hold, sell and transfer, or exchange property."[77] Defendant does not address this factor, which weighs against a finding of immunity under the Eleventh Amendment.[78]

## IV.  CONCLUSION

After assessing each factor in the six-factor balance of equities test regarding whether a political entity is considered to be an arm of the state, the Court concludes that the Lafitte Area Independent Levee District is not an arm of the state and, as such, is not entitled to immunity under the Eleventh Amendment.

---

[73] La. R.S. § 38:309(B).
[74] *See* R. Docs. 17 and 21.
[75] R. Doc. 18 at p. 6.
[76] *Cozzo*, 279 F.3d at 281.
[77] La. R.S. § 38:306(A).
[78] *See* R. Docs. 17 and 21. The Court acknowledges that this factor weighs less in the six-factor balance of equities analysis.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction[79] is **DENIED**.

New Orleans, Louisiana, January 29, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[79] R. Doc. 17.