**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHAD MICHAEL RODGERS, ET AL.**          **CIVIL ACTION**

**VERSUS**                               **NO. 24-2560**

**BOARD OF COMMISSIONERS FOR THE**       **SECTION: D (1)**
**LAFITTE AREA INDEPENDENT**
**LEVEE DISTRICT**

**ORDER AND REASONS**

Before the Court is a Motion to Dismiss for Lack of Jurisdiction under 42 U.S.C. § 1983 and Motion for Summary Judgment, filed by Defendant Board of Commissioners for the Lafitte Area Independent Levee District ("LAILD").[1] Chad Michael Rogers, Jr., Christina Rogers, C&C Rogers Rentals, LLP, and Nathan James Rogers, LLC ("Plaintiffs") have filed an Opposition,[2] and LAILD has filed a Reply.[3]

Also before the Court are LAILD's Motion to Exclude Plaintiffs' Supplemental Expert Report, Expert Opinions Expressed Therein, the Attachments Thereto and Proposed Expert and for Sanctions,[4] LAILD's Motion to Exclude Plaintiffs' Expert, Michael Gurtler, or alternatively to Limit his Testimony,[5] and LAILD's Omnibus Motion in *Limine* to Exclude Plaintiffs' Documentary Evidence and Testimony Regarding Same and for Sanctions due to Spoliation of Evidence.[6]

After a careful review of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** LAILD's Motion to Dismiss for Lack of Jurisdiction under

---

[1] R. Doc. 47.
[2] R. Doc. 56.
[3] R. Doc. 58.
[4] R. Doc. 35.
[5] R. Doc. 49.
[6] R. Doc. 59.

42 U.S.C. § 1983 and Motion for Summary Judgment and **DENIES AS MOOT** LAILD's Motion to Exclude Plaintiffs' Supplemental Expert Report, Expert Opinions Expressed Therein, the Attachments Thereto and Proposed Expert and for Sanctions, LAILD's Motion to Exclude Plaintiffs' Expert, Michael Gurtler, or alternatively to Limit his Testimony, and LAILD's Omnibus Motion in *Limine* to Exclude Plaintiffs' Documentary Evidence and Testimony Regarding Same and for Sanctions due to Spoliation of Evidence.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns real property within the bounds of the Lafitte Area Independent Levee District in Jefferson Parish, Louisiana.[7] Plaintiffs own two pieces of property in Lafitte, Louisiana.[8] Plaintiffs have their primary residence located at 5662 Jean Lafitte Blvd., Lafitte, Louisiana.[9] At their primary residence, Plaintiffs own several commercial shrimp trawlers and are engaged in the commercial shrimp/fishing industry.[10] Plaintiffs' second piece of property is located at 5644 Jean Lafitte Blvd., Lafitte, Louisiana, which Plaintiffs use as a rental property.[11] Both properties are either situated directly on or adjacent to Bayou Barataria.[12]

On January 30, 2023, the New Orleans District of the United States Army Corps of Engineers ("USACE") issued Permit No.: MVN-2018-00486-EG (the "USACE

---

[7] R. Doc. 1. The Factual and Procedural Background are taken from Plaintiffs' Complaint.
[8] *Id.* at p. 2.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *See id.*

2

Permit") to LAILD, who is listed as the "Permittee" in the USACE Permit.[13] The

USACE Permit describes the project as follows:

> Excavate and place fill material to facilitate the construction of a ring
> levee system to include lifting a segment of existing earthen levee to 8-
> feet, construction of a segment of new earthen levee, and the installation
> and maintenance of approximately 6,776-linear feet of bulkhead, four
> swing gates, and associated 7.5-foot concrete I-walls, in accordance with
> drawings enclosed in nine sheets, undated.[14]

The USACE Permit lists the project location as "[a]long Bayou Barataria and an

existing earthen levee segment (Latitude: 29.662347, Longitude: -90.110851), in

Lafitte, Louisiana, in Jefferson Parish."[15] More specifically, the drawings attached to

the USACE Permit illustrate that the project is to take place on a ring levee around

the Orange Street Basin in Lafitte, Louisiana (the "Orange Street Basin Ring Levee"

project), thereby encompassing Plaintiffs' property.[16]

On May 31, 2023, LAILD passed Resolution No. 447 ("Resolution No. 447"),

which provides in pertinent part:

> **WHEREAS,** the Lafitte Area Independent Levee District has
> determined that certain lands situated in the Parish of Jefferson, are
> required for the construction of the Lower Lafitte Tidal Projection
> Project, Jefferson Parish, Louisiana, as shown on Map attached and
> marked Exhibit "A"; and,
>
> **WHEREAS,** the Lafitte Area Independent Levee District has the
> responsibility for providing all lands determined by the Lafitte Area
> Independent Levee District to be required for the construction of the
> Lower Lafitte Tidal Projection Project; and,
>
> **WHEREAS,** the Lafitte Area Independent Levee District, pursuant to
> delegation and grant of authority by the Louisiana Coastal Protection

---

[13] R. Doc. 47-5.
[14] *Id.* at p. 1.
[15] *Id.*
[16] *Id.* at pp. 11–19.

and Restoration Authority, has the responsibility of acquisition of such lands;

**NOW THEREFORE, BE IT RESOLVED** by the Board of Commissioners of the Lafitte Area Independent Levee District, in legal session assembled, that:

> 1.    That portion of the lands situated in the Parish of Jefferson on the Map attached as Exhibit "A", said lands depicted in shades of blue (permanent servitude) on the map sheet attached hereto as Exhibit "A" consisting of one (1) page and made a part hereof, be and the same are hereby appropriated in permanent servitude (depicted in shades of blue) all in accordance with the provisions of the constitution and laws of the State of Louisiana.

> 2.    The acquisition of said lands shall be in the name of the Lafitte Area Independent Levee District.

. . . .

> **BE IT FURTHER RESOLVED,** that a certified copy of this resolution shall be furnished to each known  property owner of record affected thereby, by certified mail, return receipt requested.[17]

"Exhibit A" to the USACE Permit outlines the location parameters subject to Resolution 447, which encompass Plaintiffs' property.[18] LAILD, on June 1, 2023, sent Plaintiffs a copy of Resolution 447, informing Plaintiffs that a "contractor will be on sight in the coming weeks."[19] Construction, including the staging of heavy equipment and partial land clearing, on the Orange Street Basin Ring Levee commenced on or about August 9, 2023.[20]

---

[17] R. Doc. 47-6 at p. 2.

[18] *See id.* at p. 3.

[19] *Id.* at p. 1.

[20] R. Doc. 47-9. In a previous Order and Reasons denying LAILD's Motion to Dismiss Complaint under Fed. R. Civ. P. 12(b)(1), the Court, in providing the factual and procedural background of the above-captioned matter, stated that "[i]n October 2023, LAILD, without providing any formal notice, resolution, or initiating any expropriation proceedings, entered Plaintiffs' land and began excavating

On October 25, 2024, Plaintiffs filed suit in this Court asserting three claims against LAILD.[21] First, Plaintiffs assert a 42 U.S.C. § 1983 claim against LAILD for failure to pay just compensation for taking of property pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and Art. I, § 4 of the Louisiana Constitution (Plaintiffs' "Takings" claim).[22] Second, Plaintiffs assert a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (Plaintiffs' "Equal Protection" claim).[23] Third, Plaintiffs seek a declaratory judgment based on their Takings and Equal Protection claims.[24]

According to Plaintiffs, LAILD's activities on Plaintiffs' land, as a part of the Orange Street Basin Ring Levee project, included:

> [P]hysical entry onto and permanent occupation of portions of Plaintiffs' privately owned land, including construction of the floodwall on Plaintiffs' property line;

---

and moving rocks, dirt, and soil as a part of larger levee protection project." R. Doc. 63 at pp. 1–2. In its Order and Reasons on LAILD's Rule 12(b)(1) Motion, the Court only could properly consider "(1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts." *Id.* at pp. 4–5. As of the date of *that* Order and Reasons, the parties had not provided any information regarding Resolution 447. *See* R. Docs. 1, 17, 18, and 21. As of the date of *this* Order and Reasons, LAILD has listed that it passed Resolution 447 as an uncontested material fact in support of the instant Motion, and Plaintiffs have not provided otherwise. *See* R. Docs. 47, 56, and 58. The Court therefore accepts such fact as true.

[21] R. Doc. 1 at pp. 11–12.

[22] *Id.* at p. 6.

[23] *Id.* at p. 9.

[24] *Id.* at pp. 10–11. Specifically, Plaintiffs contend that they "are entitled to a declaratory judgment that: (a) the Levee Board's conduct has deprived Plaintiffs of their rights, privileges, and immunities secured by the Constitution of the United States, 28 U.S.C. § 1983, et seq. and the Louisiana Constitution; (b) the Levee Board has no existing rights, including but not limited to preexisting, historical or constitutional, or any right-of-way, servitude and/or easement in the portions of the Property taken; (c) the Levee Board has no right of appropriation under La. Civil Code Article 665, since the levee constructed by the Levee Board is not a hurricane protection Levee, the U.S. Army Corps of Engineers has not approved an alignment related to the property of the Rogers and/or C&C, and the Levee Board did not undertake proper appropriation proceedings; (d) the Levee Board cannot enter, take, use or destroy the property of the Rogers and/or C&C absent payment of just compensation to the full extent of Plaintiffs' loss; and, (e) the Levee Board's activities constitute a physical taking, taking *per se* and inverse condemnation." *Id.* at pp. 10–11.

[U]se of Plaintiffs' land for construction staging and access;

[I]nstallation of the floodwall along an alignment that was physically located on Plaintiffs' land, followed by removal of installed sheet piles and relocation of the alignment onto the edge of Plaintiffs' land—each requiring additional occupation and disturbance of Plaintiffs' property[.][25]

Plaintiffs allege the following impacts on their property resulting from LAILD's activities in conjunction with the Orange Street Basin Ring Levee project:

[O]bservable signs of foundation or structural disturbance that first appeared after construction began, and intensified after the sheet-pile alignment was moved and piledriving/ vibration work occurred on and near to Plaintiffs' land and improvements;

[E]limination or severe restriction of Plaintiffs' access to the water, docks, and portions of their property, including through the placement of the wall and the absence of a gate where the wall crosses Plaintiffs' land;

[L]oss of direct waterfront and dock access caused by the levee wall and the absence of any gate across Plaintiffs' property, with no public gate and no reasonably available gate anywhere nearby that would allow Plaintiffs to reach the water from their land;

[D]irect physical damage to Plaintiffs' structures, improvements, and utilities resulting from pile driving and construction activity both on and off Plaintiffs' property, including but not limited to damage to a plumbing line serving the property;

[A] permanent diminution in the fair market value of Plaintiffs' property as a result of the physical occupation, loss of access, construction-related damage, and impairment of the property's highest and best use; and

[F]ailure to tender or pay just compensation for the taking or damaging of Plaintiffs' property.[26]

---

[25] R. Doc. 56 at p. 3 (citing R. Doc. 1).
[26] *Id.* at pp. 3–4 (citing R. Doc. 1).

LAILD filed the instant Motion to Dismiss for Lack of Jurisdiction under 42 U.S.C. § 1983 and Motion for Summary Judgment on January 5, 2026.[27]

### A. LAILD's Motion to Dismiss

LAILD claims that this Court lacks subject matter jurisdiction over Plaintiffs' Takings claim under the Fifth and Fourteenth Amendments of the U.S. Constitution.[28] LAILD asserts that its activities in conjunction with the Orange Street Basin Ring Levee project did not deprive Plaintiffs of a right secured by the United States Constitution or any federal law.[29] According to LAILD, the United States Constitution protects rather than creates property interests, and thus Louisiana law must recognize Plaintiffs' property interests as actionable under the Fifth Amendment to the U.S. Constitution if Plaintiffs are to have a claim under the Fifth Amendment.[30]

LAILD argues that Louisiana law does not and submits that the record evidence "clearly establishes that LAILD possessed the right to build the flood wall under the [Louisiana Coastal Protection and Restoration Authority] and with the approval of the alignment by the USACE in accordance with Louisiana law, [and] that there was no 'invasion' or violation of any land rights of Plaintiffs."[31] Thus, LAILD contends that "[e]ven if Plaintiffs' alleged damages are found to be true, their remedy lies solely in [s]tate [c]ourt as there are no federal rights, constitutional or

---

[27] R. Doc. 47.
[28] *Id.*
[29] R. Doc. 47-1 at pp. 4–5.
[30] *Id.* at p. 8.
[31] *Id.* at p. 6.

otherwise, when the alleged damages are based upon merely negligence or lack of care in the construction process."[32]

Plaintiffs have filed an Opposition and contend that this Court does have subject matter jurisdiction over their claims under the Fifth and Fourteenth Amendments because such claims "are properly before this Court pursuant to 42 U.S.C. § 1983."[33] In support, Plaintiffs invoke the U.S. Supreme Court's decision in *Knick v. Township of Scott*, where the U.S. Supreme Court held that "'[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it . . . and therefore may bring his claim in federal court under § 1983 at that time.'"[34] Further, Plaintiffs invoke federal subject matter jurisdiction "on the independent and additional ground that Defendant's conduct violates the Equal Protection Clause of the Fourteenth Amendment."[35] Plaintiffs argue that their "equal protection claim arises directly under the United States Constitution and therefore supplies an independent federal question sufficient to establish subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983."[36]

LAILD has filed a Reply.[37] Addressing its Motion to Dismiss, LAILD advises that:

> While *Knick* very expressly overruled its own precedent that state law claims must be exhausted before proceeding in federal court, *Knick* did not address, alter, change or overrule the longstanding precedent that the Fifth Amendment "protects rather than creates property interests"

---

[32] *Id.*
[33] R. Doc. 56 at p. 1.
[34] *Id.* at p. 7 (quoting *Knick v. Township of Scott*, 588 U.S. 180, 185 (2019)).
[35] *Id.* at p. 12.
[36] *Id.*
[37] R. Doc. 58.

and to determine whether a property interest exists that triggers the Fifth Amendment, the Court must look to "existing rules or understandings that stem from an independent source such as state law." *Knick* simply changed the venue in which a plaintiff may assert a Fifth Amendment claim if there is a property interest that the Fifth Amendment protects. It did not strip the Court of the responsibility of determining whether a property interest exists to give rise to a Fifth Amendment claim.[38]

Accordingly, LAILD reiterates that Louisiana law holds that an appropriation of a levee servitude under Louisiana Civil Code art. 665 ("Art. 665") is not actionable under the Fifth Amendment to the U.S. Constitution.[39] As further explained by LAILD:

> Plaintiffs [sic] assertion that admission of an appropriation occurring and no payment being made yet equals a de facto constitutional violation ignores generations of caselaw and the analysis that must be conducted to determine whether Plaintiffs have a constitutionally protected property interest. Plaintiffs sidestep this analysis and issue because the law is clear that under Louisiana Civil Code Article 665 and U.S. Supreme Court precedent Plaintiffs do not have a claim for a federal taking because state law has already imposed a legal levee servitude limiting their property rights – a legal levee servitude that places this case outside of this Court's jurisdiction.[40]

Thus, according to LAILD, its Motion to Dismiss should be granted.[41]

### B. LAILD's Motion for Summary Judgment

In the alternative that its Motion to Dismiss is denied, LAILD contends that it is entitled to summary judgment as to both Plaintiffs' Takings and Equal Protection claims.[42] As to Plaintiffs' Takings claim, LAILD alleges that Plaintiffs have failed to

---

[38] *Id.* at pp. 2–3 (emphasis removed).
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] R. Doc. 47-1.

state a claim under § 1983 because "USACE approved the alignment of the Orange Street Basin Ring Levee consistent with Louisiana Civil Code Article 665, LAILD passed a Resolution months before any proposed construction began, Plaintiffs were sent that Resolution and Notice of Start letter, and Plaintiffs had knowledge of the ring levee being built."[43] Thus, LAILD asserts that did not violate any Louisiana law and that Plaintiffs are unable to show that LAILD's conduct deprived them of a federally protected right.[44]

Regarding Plaintiffs' Equal Protection claim, LAILD contends that Plaintiffs have failed to offer any evidence that LAILD violated the Fourteenth Amendment's Equal Protection clause.[45] In support, LAILD explains as follows:

> Plaintiffs also complain that they did not receive a gate when others did and that LAILD violated Plaintiffs' 14th Amendment rights to equal protection for "favoring" other residents by providing them gates. Discovery in this matter, however, demonstrates Plaintiffs' assertion to be not only inaccurate but patently false. In fact, testimony revealed that the decision as to whether a resident or business obtained a gate, with relation to the Orange Street Basin Ring Levee, laid solely with the CPRA.[46] In fact, the evidence shows that LAILD not only did not make the decision as to which property obtained a gate, but Timothy Kerner, Jr., on behalf of LAILD advocated for a gate for Plaintiffs – yet that request was denied – by the CPRA.[47]

Thus, LAILD submits that they are entitled to summary judgment on both Plaintiffs' Takings and Equal Protection claims.[48]

---

[43] *Id.* at p. 14.
[44] *Id.*
[45] *Id.* at p. 19.
[46] CPRA stands for the Coastal Protection and Restoration Authority.
[47] R. Doc. 47-1 at p. 19.
[48] *Id.* at p. 20.

Plaintiffs have filed an Opposition.[49] Plaintiffs first contend that LAILD's Motion for Summary Judgment "fails at the threshold because it rests entirely on defenses that were never pleaded in its Answer."[50] Nonetheless, as to their Takings claim, Plaintiffs assert that "[u]nder *Knick*, the failure to pay just compensation at the time of a physical taking is itself the constitutional violation. Whether Defendant ultimately owes compensation, and in what amount, presents fact-intensive merits questions inappropriate for summary judgment."[51]

Pertaining to their Equal Protection claim, Plaintiffs advise that "[e]qual protection liability does not require that a defendant be the final or sole decision-maker; it attaches to any state actor who participates in, enforces, implements, ratifies, or knowingly acquiesces in a discriminatory outcome."[52] Plaintiffs further submit that:

> LAILD is the entity that appropriated Plaintiffs' land, constructed and continues to maintain the flood wall, controls access across it, and exercises authority over Plaintiffs' property. Whether CPRA participated in gate placement decisions does not negate LAILD's responsibility for operating and enforcing a system that denies Plaintiffs access while granting it to similarly situated property owners.[53]

Thus, Plaintiffs assert that summary judgment should be denied as to both their Takings and Equal Protection claims.[54]

---

[49] R. Doc. 56
[50] *Id.* at p. 13.
[51] *Id.* at p. 12.
[52] *Id.* at p. 16.
[53] *Id.*
[54] *Id.*

11

In Reply, LAILD argues that Plaintiffs "seem to rest their opposition on the premise that this is an appropriation and no compensation has yet been made – so therefore, they claim victory."[55] LAILD asserts that Plaintiffs' position is problematic, as "the law is clearly contrary to Plaintiffs' assertions in that Louisiana law secures the right of appropriation as the right to act first and talk later . . . ."[56] Further, addressing Plaintiffs' Equal Protection claim, LAILD contends that "the evidence is uncontroverted that CPRA made the decisions about who obtained a gate, and LAILD was neither the moving force behind the decision nor caused any alleged deprivation of Plaintiffs rights."[57] Thus, LAILD submits that it was not responsible for any discriminatory conduct imposed on Plaintiffs, and thus its Motion for Summary Judgment should be granted.[58]

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1) Motion to Dismiss

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case.[59] A case is properly dismissed pursuant to Rule 12(b)(1) "for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[60]  In considering a challenge to subject matter jurisdiction under Rule 12(b)(1), "the district court is 'free to weigh the evidence and

---

[55] R. Doc. 58 at p. 6.
[56] *Id.* at p. 7 (citation modified).
[57] *Id.* at p. 8.
[58] *Id.*
[59] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).
[60] *Krim v. Pcorder.Com, Inc.,* 402 F.3d 489, 494 (5th Cir. 2005) (citing *Home Builders Ass'n Of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

resolve factual disputes in order to satisfy itself that it has the power to hear the case."[61] Thus, a motion to dismiss for lack of jurisdiction may be decided by the Court based on: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.[62] The party asserting jurisdiction carries the burden of proof when facing a Rule 12(b)(1) motion to dismiss.[63] A motion to dismiss under 12(b)(1) should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[64] When a party seeks dismissal for lack of jurisdiction and, alternatively, a motion for summary judgment, the Court considers the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.[65]

### B. Rule 56 Motion for Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[66] A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[67] Further, a fact is "material" if it "might affect the outcome of the suit under the governing

---

[61] *Krim*, 402 F.3d at 494 (quoting *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).

[62] *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. Tci/Us W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)) (internal quotation marks omitted).

[63] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming*, 281 F.3d at 161).

[64] *Ramming,* 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc.,* 143 F.3d at 1010).

[65] *See id.*

[66] FED. R. CIV. P. 56(A); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[67] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

law."[68]   When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[69] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[70]   Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[71]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[72]   The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[73]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[74]  The burden then shifts to the nonmoving party who must go beyond

---

[68] *Anderson*, 477 U.S. at 248.

[69] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

[70] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted).

[71] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

[72] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

[73] *Id.* at 1265.

[74] *See Celotex*, 477 U.S. at 322–23.

the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[75]

### III.   ANALYSIS

LAILD asserts that this Court lacks subject matter jurisdiction over Plaintiffs' Takings claim.[76] Alternatively, LAILD asserts that it is entitled to summary judgment over both Plaintiffs' Takings and Equal Protection claims.[77] The Court addresses the jurisdictional question first. For the reasons set forth below, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' Takings claim and further finds that LAILD is entitled to summary judgment on Plaintiffs' Equal Protection claim.[78]

### A.  The Court lacks subject matter jurisdiction over Plaintiffs' Takings claim.

In order to determine whether the Court has subject matter jurisdiction over Plaintiffs' Takings claim, the Court must first address: (1) whether Louisiana law mandates Fifth Amendment compensation for appropriations of levee servitudes; (2) whether a levee servitude exists on Plaintiffs' property under Art. 665; and (3)

---

[75] *Id.* at 324 (quoting FED. R. CIV. P. 56(E)).

[76] R. Doc. 47.

[77] *Id.*

[78] The Court notes that if it were to first address Plaintiffs' Equal Protection claim, it would decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law Takings claim. A district court may decline to exercise supplemental jurisdiction over a state law claim under subsection (a) as defined above if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). It is pursuant to § 1367(c)(3) that the Court would decline to exercise supplemental jurisdiction.

whether LAILD effectuated an appropriation of a levee servitude on Plaintiffs' property. The Court takes each in turn.

> 1. *Louisiana law does not mandate Fifth Amendment compensation for appropriations of levee servitudes.*

It is undisputed that Plaintiffs have a protectable property interest in their land.[79] Instead, the issue is whether such property interest gives rise to a claim under the Fifth Amendment of the U.S. Constitution, made applicable to states through the Fourteenth Amendment of the U.S. Constitution. The Court finds that it does not.

"A property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government."[80] However, as the Supreme Court has "said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[81] Similarly, "[t]he Takings Clause protects property interests but does not create them. Instead, 'the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law.'"[82] Thus, the Court turns to Louisiana law to determine whether Plaintiffs have a protectable property interest giving rise to Fifth Amendment compensation. If Louisiana law provides a property interest giving rise to Fifth

---

[79] *See* R. Docs. 47, 56, and 58.
[80] *Knick v. Township of Scott*, 588 U.S. at 206.
[81] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)(quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).
[82] *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 322 (5th Cir. 2022)(quoting *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998)).

Amendment compensation, then § 1983 is the appropriate procedural vehicle in which Plaintiffs bring their Takings claim in this Court.[83]

Throughout the long-winding history of the Art. 665 Louisiana levee servitude, as discussed *infra* Part III.A.2., courts have continuously held that the Fifth Amendment of the U.S. Constitution does not mandate compensation for levee servitude appropriations.[84] In *General Box Co. v. United States*, the U.S. Supreme Court held that an appropriation of a levee servitude—coincidentally, a Louisiana levee servitude—did not effectuate a taking under the Fifth Amendment of the U.S. Constitution.[85] Specifically, the U.S. Supreme Court held that:

> The petitioner sought compensation for the destruction of the trees based upon a claim that the 'destruction of said timber was (a) taking . . . within the meaning of the Fifth Amendment to the Federal Constitution.' But this property was not taken by the United States in the exercise of its power of eminent domain. In effect, the timber was 'owned' by Louisiana for levee purposes, and the United States succeeded to that 'ownership' by 'conveyance.' Louisiana furnished its batture as required by the law of both the United States and Louisiana for use in protecting the property in the State from floods.[86]

Similarly, in *DeSambourg v. Board of Commissioners*, the Louisiana Supreme Court explained that:

> The constitutional guarantee that property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit, does not apply to the taking or appropriation of property pursuant to the levee servitude. This "levee servitude" exception does

---

[83] *See DeVillier v. Texas*, 601 U.S. 285, 291 (2024)("Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts. Instead, constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose, see, *e.g.*, 42 U.S.C. § 1983.").

[84] *See South Lafourche Levee District v. Jarreau*, 2016-0788 (La. 3/31/17), p. 16, 217 So. 3d 298, 309 (gathering authority).

[85] *General Box Co. v. United States,* 351 U.S. 159, 166–67 (1956).

[86] *Id.* at 167.

not offend the Fifth and Fourteenth Amendments to the United States Constitution when the servitude is administered impartially since title to riparian lands have been burdened with the legal servitude for levee and road use from the time those lands were separated from the public domain.[87]

Most recently, the Louisiana Supreme Court in *South Lafourche Levee District v. Jarreau* noted that "[a]lthough the Louisiana Constitution and state statutes require gratuitous compensation for levee servitude appropriations, courts have maintained that the Fifth Amendment does not mandate compensation."[88]

Indeed, this Court agrees with the U.S. Supreme Court, Louisiana Supreme Court, and other courts that when a levee board exercises its levee servitude via appropriation, "there is no 'taking,' within the meaning of the Fifth Amendment of the Constitution of the United States . . . ."[89] Accordingly, if LAILD has effectuated an appropriation of a levee servitude under Art. 665, then the Court lacks subject matter jurisdiction. The Court undertakes such analysis below to determine if LAILD effectuated appropriate of a levee servitude.

### 2. *A levee servitude under Art. 665 exists on Plaintiffs' property.*

Louisiana Civil Code art. 659 provides that "[l]egal servitudes are limitations on ownership established by law for the benefit of the general public or for the benefit of particular persons."[90] A levee servitude is one type of legal servitude, and the levee

---

[87] *DeSambourg v. Board of Commissioners*, 621 So.2d 602, 606 (La. 1993)(citation modified).

[88] *South Lafourche Levee District v. Jarreau*, 2016-0788 (La. 3/31/17), p. 16, 217 So. 3d at 309.

[89] *Vela v. Plaquemines Parish Government*, 97-2610 (La. App. 4 Cir. 3/10/99) c/w 97-2611 (La. App. 4 Cir. 3/10/99), p. 3, 729 So.2d 178, 181.

[90] LA. CIV. CODE art. 659 (2025).

servitude has been in existence prior to Louisiana's admission into the Union.[91] By way of background, the Louisiana Supreme Court has provided the following historical context:

> Prior to the Louisiana Purchase, the sovereign governments of France and Spain included in their land grants both reservations of public servitudes over riparian land and onerous levee obligations requiring such owners to build levees and keep them in repair at their own expense under penalty of forfeiture. Under this regime, the riparian landowner bore the burden and expense of protecting all people and property from flooding. The imposition of this obligation on private parties persisted even after the Louisiana Purchase. It was not until the mid–19th century that the practice changed due to the need for an efficient and cohesive state-wide plan for flood protection. The obligation to build and maintain levees was then shifted from the private landowner to the state government. The first levee district was formed in 1852, and since 1878, the construction, maintenance and supervision of the levee system has been a function of the government.
>
> Despite the shift in responsibility, riparian land remained burdened by a levee servitude. When the state assumed responsibility for levees, no right of action for compensation existed for lands appropriated pursuant to the levee servitude. Recognizing the state's existing right, the United States Supreme Court in *Eldridge* noted "the riparian owner enjoys his property *sub modo*, i.e., subject to the right of the public to reserve space enough for levees, public roads and the like" and "never acquires complete dominion."
>
> In 1898, the Louisiana legislature, for the first time, provided compensation to riparian landowners whose property was appropriated under the levee servitude. However, the effect of this constitutional provision was limited to the jurisdiction of the Orleans Levee District and specifically exempted batture. The Louisiana Constitution of 1921 provided compensation for the first time on a statewide basis to property owners whose lands, excluding batture, and improvements were used or destroyed for levee or levee drainage purposes. This provision entitled riparian landowners to receive up to "the assessed

---

[91] *See South Lafourche Levee District v. Jarreau*, 2016-0788 (La. 3/31/17), p. 15, 217 So. 3d at 309 ("The Louisiana Constitution of 1974 reaffirmed the levee servitude as a constitutional, legal servitude."); *see also* LA. CIV. CODE art. 665 (2026).

value of the preceding year" of the land taken and, for many years, was considered a "mere gratuity."

The Louisiana Constitution of 1974 reaffirmed the levee servitude as a constitutional, legal servitude. The new Constitution altered the measure of the riparian landowner's compensation from the property's "assessed value of the preceding year" to providing that for "lands and improvements . . . actually used or destroyed for levees or levee drainage purposes [compensation] shall be paid as provided by law." Implementing the 1974 constitutional provision, the legislature increased compensation from "assessed value" to "fair market value to the full extent of the loss" for the actual taking of improvements and all lands, excluding batture.[92]

In 2006, in the aftermath of Hurricanes Katrina and Rita, the Louisiana legislature amended art. VI, § 42 of the Louisiana Constitution to, among other things, "limit compensation for the appropriation of property for levee purposes to the amount required by the Fifth Amendment[.]"[93] The Supreme Court explained the rationale of the 2006 amendments:

Following the devastation caused by Hurricanes Katrina and Rita to Louisiana citizens and property, the legislature wanted to take all measures necessary to repair and restore the Louisiana coast, and to protect the State and its citizens from future hurricane and flood events. The ability of the state and local levee districts to protect life and property is directly impacted by its right-of-way acquisition costs, a major component of a hurricane and flood protection project's overall cost. Given the "full extent of loss" provisions of the 1974 Constitution, the state and levee districts were faced with daunting expropriation or appropriation costs. The legislature had to take steps to contain those costs for Louisiana to qualify for federal funds for hurricane protection and flood control projects. While the legislature wanted to significantly reduce acquisition costs, it also sought to protect an owner's right to compensation for the taking, loss or damage to, his property for use in hurricane protection projects.[94]

---

[92] *See South Lafourche Levee District v. Jarreau*, 2016-0788 (La. 3/31/17), pp. 14–16, 217 So. 3d at 308–09 (citation modified).
[93] *Id.*, 2016-0788 (La. 3/31/17), p. 19, 217 So. 3d at 311.
[94] *Id.*

Further attempting to protect the Louisiana coast from flooding events, the Louisiana legislature amended Art. 665 by passing Act No. 776 of the 2006 Regular Legislative Session ("Act 776").[95] Prior to Act 776, Art. 665 provided levee servitudes only on riparian lands, reading as follows:

> Servitudes imposed for the public or common utility relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers and for the making and repairing of levees, roads, and other public or common works.
>
> All that relates to this kind of servitude is determined by laws or particular regulations.[96]

After the passage of Act 776, the levee servitude was extended to non-riparian property.[97] Art. 665 now provides:

> Servitudes imposed for the public or common utility relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers and for the making and repairing of levees, roads, and other public or common works. *Such servitudes also exist on property necessary for the building of levees and other water control structures on the alignment approved by the U.S. Army Corps of Engineers as provided by law, including the repairing of hurricane protection levees.*
>
> All that relates to this kind of servitude is determined by laws or particular regulations.[98]

Art. 665, as amended, "provides for the same type of servitude, that was previously only imposed on riparian property, to now exist on non-riparian property that is 'necessary for the building of levees and other water control structures' if that

---

[95] *See* 2006 La. Acts. 776.

[96] *See, e.g.,* LA. CIV. CODE art. 665 (2005).

[97] *See* 2006 La. Acts. 776.

[98] LA. CIV. CODE art. 665 (2026)(emphasis added).

21

property is located in the alignment approved by the Corps."[99] The Louisiana Fourth Circuit has stated that "[i]t is evident that the plain language of the 2006 amendment to La. C.C. art. 665 eliminated the requirement that land be riparian in order for a servitude to be established if, that property is located in the alignment approved by the Corps."[100]

Here, Plaintiffs' property is not riparian in nature, as such property is not "fronted on a navigable river when the tract was first separated from the sovereign[.]"[101] Instead, Plaintiffs' property is non-riparian land that is adjacent to Bayou Barataria in Lafitte, Louisiana.[102] Therefore, in this case, an Art. 665 servitude may exist only if Plaintiffs' "property [is] necessary for the building of levees and other water control structures on the alignment approved by the U.S. Army Corps of Engineers."[103] The Court finds that an Art. 665 servitude exists on Plaintiffs' property.

On January 30, 2023, the USACE issued the USACE Permit, authorizing LAILD, as the "Permittee[,]" to construct a ring levee system on Plaintiffs' land.[104] The USACE Permit authorized LAILD to:

> Excavate and place fill material to facilitate the construction of a ring levee system to include lifting a segment of existing earthen levee to 8-feet, construction of a segment of new earthen levee, and the installation

---

[99] *Plaquemines Dirt & Clay Company, L.L.C. v. Plaquemines Parish Government*, 2019-0831 (La. App. 4 Cir. 6/3/20), pp. 4–5, 364 So. 3d 274, 277.

[100] *Id.*, 2019-0831 (La. App. 4 Cir. 6/3/20), p. 5, 364 So. 3d at 277.

[101] *Taylor v. Board of Levee Com'rs of Tensas Basin Levee Dist.*, 332 So. 2d 495, 497 (La. App. 3d Cir. 1976); *see Vela*, 97-2610 (La.App. 4 Cir. 3/10/99) c/w 97-2611 (La. App. 4 Cir. 3/10/99), p. 3, 729 So. 2d 178, 181 ("Riparian lands, i.e., lands fronting on rivers and streams, have been burdened with a public servitude for levees ever since the land was first separated from the public domain.").

[102] *See* R. Docs. 1 and 56-2 at pp. 6–7.

[103] LA. CIV. CODE art. 665 (2026).

[104] R. Doc. 47-5 at p. 1.

> and maintenance of approximately 6,776-linear feet of bulkhead, four swing gates, and associated 7.5-foot concrete I-walls, in accordance with drawings enclosed in nine sheets, undated.[105]

The work was to take place "[a]long Bayou Barataria and an existing earthen levee segment (Latitude: 29.662347, Longitude: -90.110851), in Lafitte, Louisiana, in Jefferson Parish."[106] In Figure 1, attached to the USACE Permit, a topographical vicinity map outlines the location parameters of the entire Lower Lafitte Orange Street Basin Ring Levee project.[107] The location parameters encompass Plaintiffs' property located at 5644 Jean Lafitte Blvd., Lafitte, Louisiana and 5662 Jean Lafitte Blvd., Lafitte, Louisiana.[108] Pursuant to the USACE Permit, LAILD passed Resolution 447 on May 31, 2023.[109] Exhibit A attached to Resolution 447 illustrates that the property subject to Resolution 447 is identical to the location parameters set forth in the USACE Permit, which both encompass Plaintiffs' property.[110]

Accordingly, the Court finds that Plaintiffs' land is subject to a levee servitude under Art. 665 because Plaintiffs' land is "property necessary for the building of levees and other water control structures on the alignment approved by the U.S. Army Corps of Engineers[,]"[111] as evidenced through the USACE Permit issued to LAILD.[112]

---

[105] *Id.* at p. 1.

[106] *Id.*

[107] *Id.* at p. 11.

[108] *See id.*; R. Doc. 1 at p. 2.

[109] R. Doc. 47-6.

[110] *See* R. Docs. 47-5 and 47-6.

[111] LA. CIV. CODE art. 665 (2026).

[112] *See* R. Doc. 47-5.

*3. LAILD appropriated a levee servitude on Plaintiffs' property through Resolution 447.*

The Court, having determined that a levee servitude under Art. 665 exists on Plaintiffs' property, next addresses whether LAILD effectuated an appropriation of such levee servitude on Plaintiff's property. The Court finds that LAILD has done as much.

An appropriation of a levee servitude implicates various constitutional rights and property rights unique to the State. Article I, § 4 of the Louisiana Constitution provides, in pertinent part:

> (A)  Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
>
> (B)(1)  Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.
> . . . .
>
> (G)  Compensation paid for the taking of, or loss or damage to, property rights for the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, including mitigation related thereto, shall not exceed the compensation required by the Fifth Amendment of the Constitution of the United States of America.  However, this Paragraph shall not apply to compensation paid for a building or structure that was destroyed or damaged by an event for which a presidential declaration of major disaster or emergency was issued, if the taking occurs within three years of such event.  The legislature by law may provide procedures and definitions for the provisions of this Paragraph. Addressing compensation for property used or destroyed, Article VI, § 42 of the Louisiana Constitution.[113]

Article VI, § 42 of the Louisiana Constitution provides as follows:

---

[113] LA. CONST. Art. I, § 4.

24

(A)   Compensation.   Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law.  With respect to lands and improvements actually used or destroyed in the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, including mitigation related thereto, such payment shall not exceed the amount of compensation authorized under Article I, Section 4(G) of this constitution.

. . . .

(B)   Appropriation.   Nothing in this Section shall prevent the appropriation of such property before payment.[114]

Additionally, Louisiana Revised Statute § 38:301 provides, in pertinent part:

C. (1)(a) All lands, exclusive of batture, and improvements hereafter actually taken, used, damaged, or destroyed for levee or levee drainage purposes shall be paid for at fair market value to the full extent of the loss.
(b)(i) The owner shall be given written notice of the appropriating resolution by the levee board within ten days of the date of its passage.

. . . .

(e) Notwithstanding any other provision to the contrary, the various levee districts shall also have the authority to appropriate lands and improvements for temporary servitudes for levee construction purposes. As to these temporary servitudes, the "fair market value" shall mean the use value of the lands actually used for the period of time utilized by the appropriating agency.

(f) It shall be the duty of the appropriating agency to specify and delineate at the time of the appropriating resolution, whether areas taken shall be burdened with a permanent levee servitude or a temporary servitude for levee construction purposes.

(g) "Use" shall be deemed to occur at the time the levee board formally adopts its resolution specifically describing an area to be utilized for

---

[114] LA. CONST. Art. VI, § 42.

> levees and levee drainage purposes through the exercise or acquisition of a permanent levee servitude or a temporary servitude provided that actual use of the property commences within two years of the adoption of the resolution. Notice by certified mail shall be given to the owner within five days of the adoption of the resolution.[115]

The Louisiana Supreme Court has held that an "[a]ppropriation, as opposed to expropriation, is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding."[116] The Louisiana Supreme Court further noted that "appropriation involves the taking of a servitude, whereas expropriation may involve the taking of ownership."[117]

On numerous occasions, the Louisiana Supreme Court has determined a levee board's passing of a resolution is what constitutes an appropriation. In *A.K. Roy, Inc. v. Board of Commissioners for Pontchartrain Levee District*, the Louisiana Supreme Court held that "[i]n 1948 and 1949, the defendant Levee Board, in pursuant of Article XVI, Section 8 of the Louisiana Constitution, making it their mandatory duty to erect a levee along the shores of Lake Pontchartrain and, to that end, authorizing the Board to float a bond issue for two million dollars, began the appropriation of lands necessary for the construction of such levee, and by resolution adopted on March 24, 1949, appropriated all lands . . . ."[118]

Similarly, in *Wynat Development Co. v. Board of Levee Commissioners for Parish of Orleans*, the Louisiana Supreme Court explained that "[i]n the instant case,

---

[115] La. R.S. §§ 38:301(C)(1)(a), (b)(i), (C)(e)–(g).

[116] *South Lafourche Levee District v. Jarreau*, 2016-0788 (La. 3/31/17), p. 9, 217 So. 3d 298, 305 (citing *Richardson & Bass v. Board of Levee Commissioners*, 226 La. 761, 77 So. 2d 32 (1954)).

[117] *Id.*, 2016-0788 (La. 3/31/17), p. 10, 217 So. 3d at 305.

[118] *A.K. Roy, Inc. v. Board of Commissioners for Pontchartrain Levee Dist.*, 111 So. 2d 765, 766–67 (La. 1959).

as both parties correctly contend, [Plaintiff's] land was appropriated by the Levee Board when it passed the appropriating resolution on July 20, 1983. Thus, the Levee Board's resolution effected an appropriation of [Plaintiff's] property for levee purposes."[119] The Louisiana Supreme Court in *Wynat Development Co.* further explained that a "landowner's right to enforce the obligation, i.e., to file a suit to determine damages owed, and to obtain a judgment awarding damages, accrues with the passage of the resolution and not with the occurrence of any term or suspensive condition."[120] And again, most recently, the Louisiana Supreme Court held that "[a]ppropriation, as opposed to expropriation, is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding."[121]

Here, applying the above principles, the Court finds that LAILD carried out an appropriation of a levee servitude under Art. 665 on May 31, 2023 – the date in which it passed Resolution 447. As explained *supra* Part III.A.1, "[a]lthough the Louisiana Constitution and state statutes require gratuitous compensation for levee servitude appropriations, courts have maintained that the Fifth Amendment does not mandate compensation."[122] The Court therefore does not have subject matter jurisdiction over Plaintiffs' Takings claim.

Notably, in a similar case involving the LAILD, this Court found that the LAILD engaged in an unconstitutional taking for its levee construction activities on

---

[119] *Wynat Development Co. v. Board of Levee Commissioners for Parish of Orleans*, 97-2121 (La. 4/14/98), p. 5, 710 So. 2d 783, 785–86 (La. 1998).

[120] *Id.*, 97-2121 (La. 4/14/98), p. 15, 710 So. 2d at 791.

[121] *South Lafourche Levee District V. Jarreau*, 2016-0788 (La. 3/31/17), p. 9, 217 So. 3d 298, 305 (Citing *Richardson & Bass V. Board Of Levee Commissioners*, 226 La. 761, 77 So.2d 32 (1954)).

[122] *South Lafourche Levee District v. Jarreau*, 2016-0788 (La. 3/31/17), p. 16, 217 So. 3d at 309.

another landowner's property also located in Lafitte, Louisiana.[123] That case, *CMP, LLC v. Board of Commissioners for the Lafitte Area Independent Levee District*,[124] is readily distinguishable.

In the case at bar, LAILD passed Resolution 447 roughly two months *prior* to entering Plaintiffs' property and commencing work on the Orange Street Basin Ring Levee project.[125] In *CMP, LLC*, LAILD passed Resolution 495 to provide for an appropriation of a portion of that plaintiff's land.[126] Crucially, in *CMP, LLC*, LAILD did not pass Resolution 495 until three months *after* commencing work on that plaintiff's land to raise an existing levee.[127]

The timing of the resolution is the fundamental distinction. Here, when LAILD passed Resolution 447 prior to entering Plaintiffs' property, LAILD invoked its appropriating authority under Art. 665 "for the building of levees and other water control structures on the alignment approved by the U.S. Army Corps of Engineers."[128] Again, the Louisiana Supreme Court has routinely determined that it is the passing of a resolution that effectuates an appropriation of a levee servitude.[129] It is in this vein that a levee board has "the right to act first and talk later[,]"[130] which allows a levee board "to pass a resolution and then occupy the land while discussions

---

[123] *See CMP, LLC v. Board of Commissioners for the Lafitte Area Independent Levee District*, Civil Action No. 24-2298, 2026 WL 171813, at *1 (E.D. La. Jan. 22, 2026)(Vitter, J.). The parties are well aware of the Court's rulings in that matter as each side is represented by the same counsel.
[124] *See CMP, LLC*, 2026 WL 171813, at *1.
[125] *See* R. Docs. 47-6 and 47-9.
[126] *CMP, LLC*, 2026 WL 171813, at *1.
[127] *Id.*
[128] LA. CIV. CODE art. 665.
[129] *A.K. Roy, Inc.*, 111 So. 2d at 766–67; *Wynat Development Co.*, 97-2121 (La. 4/14/98), p. 5, 710 So. 2d at 785.
[130] *Wynat Development Co.*, 97-2121 (La. 4/14/98), p. 5, 710 So. 2d at 785.

continue regarding the amount of compensation to be paid for the appropriated land."[131] The "act first and talk later" axiom does not give a levee board *carte blanche* to first occupy property and then past an appropriating resolution, in violation of La. R.S. § 38:301, without incurring additional liabilities.[132]

In *CMP, LLC*, LAILD violated the plain language of La. R.S. § 38:301 when it occupied that plaintiff's property and passed Resolution 495 three months after.[133] Thus, in that case, there was an approximate three-month period where LAILD occupied that plaintiff's land without a resolution. Since the Louisiana Supreme Court has routinely found that the resolution is what effectuates an appropriation of a levee servitude, that three-month period in *CMP, LLC* did not constitute an appropriation or an expropriation.[134] Instead, that period constituted a partial taking under the theory of inverse condemnation, which allows a property owner to "'recover

---

[131] *CMP, LLC v. Board of Commissioners for the Lafitte Area Independent Levee District*, Civil Action No. 24-2298, 2026 WL 171813, at *5 (E.D. La. Jan. 22, 2026)(Vitter, J.).

[132] *See* LA. CONST. art. VI, § 42. In *CMP, LLC*, this Court disagreed with the Louisiana Fifth Circuit of Appeal in *Magee v. West Jefferson Levee District*, 17-294 (La. App. 5 Cir. 12/13/17), 235 So.3d 1230. *CMP, LLC*, 2026 WL 171813, at *5. This Court explained that "insofar as LAILD asserts that the Louisiana Fifth Circuit Court of Appeal held in *Magee v. West Jefferson Levee District* that non-compliance with La. R.S. § 38:301 did not entitle the *Magee* plaintiffs to additional compensation, the Court finds such reasoning unpersuasive. Notedly, in *Magee*, the appropriating agency complied with § 38:301's resolution and notice requirements that LAILD, here, has failed to do. Again, LAILD neither passed a resolution nor notified the owner of said resolution until after they had begun to occupy Plaintiff's property. Case law and the plain text of the statute demonstrate that an appropriation occurs at the time of the *resolution*. Without a resolution, no appropriation can occur. Second, LAILD contends that *Magee* held that § 38:301 is directive, as opposed to mandatory, and thus no additional compensation for the plaintiffs was warranted even though the *Magee* defendant violated the plain language of the statute. This Court is skeptical of using such methods of statutory interpretation." *Id.* at *5 (emphasis original).

[133] *CMP, LLC v. Board of Commissioners for the Lafitte Area Independent Levee District*, Civil Action No. 24-2298, 2026 WL 171813, at *4–5 (E.D. La. Jan. 22, 2026)(Vitter, J.).

[134] "Appropriation, as opposed to expropriation, is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding . . . . Furthermore, appropriation involves the taking of a servitude, whereas expropriation may involve the taking of ownership." *South Lafourche Levee District*, 2016-0788 (La. 3/31/17), pp. 9–10, 217 So. 3d at 305 (citation modified). The parties do not contend that an expropriation occurred. *See* R. Docs. 1, 47, 56, and 58.

the value of property which has been taken in fact by the governmental defendant,

even though no formal exercise of the power of eminent domain has been attempted

by the taking agency.'"[135] Here, however, no such period exists.

As a final point, Plaintiffs further argue that:

A physical taking without just compensation is not a discretionary act. It is not insulated by sovereign immunity. And it is not rendered nonjusticiable by labeling the project "hurricane protection" or by invoking a purported "servitude," whether valid or invalid. Louisiana law provides no license to take private property without paying for it.[136]

Such argument misses the forest for the trees. In this part of its analysis, the Court's

ruling is narrow. The Court, having found that a levee servitude exists on Plaintiffs'

property and now finding that LAILD has effectuated an appropriation of such

servitude by passing Resolution 447, determines it lacks subject matter jurisdiction

over Plaintiffs' Takings claim. This finding does not go further to determine whether

Plaintiffs are entitled to compensation under state law or under some other theory.

LAILD's Motion to Dismiss under Rule 12(b)(1) is granted.[137]

---

[135] *CMP, LLC*, 2026 WL 171813, at *7 (quoting *United States v. Clarke*, 445 U.S. 253, 257 (1980) (citation modified)).
[136] R. Doc. 56 at p. 5.
[137] R. Doc. 47.

### B. LAILD is entitled to summary judgment on Plaintiffs' Equal Protection claim.[138]

LAILD argues that it is entitled to summary judgment on Plaintiffs' Equal Protection claim, as "the evidence is uncontroverted that CPRA made the decisions about who obtained a gate, and LAILD was neither the moving force behind the decision nor caused any alleged deprivation of Plaintiffs rights."[139] Plaintiffs, in turn, argue that LAILD "cannot insulate itself from constitutional liability by delegating design authority to another agency and then implementing, enforcing, and benefiting from the resulting deprivation. LAILD is the entity that appropriated Plaintiffs' land, constructed and continues to maintain the flood wall, controls access across it, and exercises authority over Plaintiffs' property."[140]

As an initial matter, the parties dispute whether LAILD, as a municipality, can be held liable for a violation of an Equal Protection clause under the Fourteenth Amendment for the alleged discriminatory conduct.[141] The Court finds that dispute of no moment because, even assuming LAILD could be held liable as the appropriate

---

[138] Insofar as Plaintiffs contend that LAILD waived defenses by failure to pleading such defenses in its Answer, the Court finds such argument unpersuasive. R. Doc. 56 at p. 13. The Fifth Circuit has "long recognized that technical failure to comply precisely with Rule 8(c) is not fatal where a party raises the defense in the trial court in a manner that does not result in unfair surprise . . . . Specifically, if a defendant raises an affirmative defense at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond, the defense is not waived." *Buchanan v. Harris*, No. 23-20128, 2024 WL 1927651, at \*4 (5th Cir. May 2, 2024)(citation modified). The Court finds that LAILD has raised such defenses at a pragmatically sufficient time. *See, e.g., Vanhoy v. United States*, 514 F.3d 447, 450–51 (5th Cir. 2008) (finding that an affirmative defense was not waived when raised for the first time in pretrial motions three months before trial); *see also Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000) (finding that an affirmative was not waived when raised for the first time via summary judgment and plaintiff was not prejudiced in its ability to respond to the issue).
[139] R. Doc. 58 at p. 8.
[140] R. Doc. 56 at p. 16.
[141] *See* R. Docs. 47, 56, and 58.

actor, Plaintiffs have failed to a raise a genuine issue of material fact as to the merits of their Equal Protection claim.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."[142] "[A] violation of equal protection occurs only when the government treats someone differently than others similarly situated; if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws."[143] To that end, "an equal protection claim depends on either identifying a class . . . or showing that the aggrieved party is a 'class of one[.]'"[144]

"In the instant case, [Plaintiffs] do[] not claim that [they] [were] discriminated against on the basis of [their] membership in any particular class and, therefore, must rely on the class of one theory."[145] Plaintiffs allege LAILD disparately refused "to build a floodgate or other access to the dock and facilities from the property"[146] of Plaintiffs and "favored other nearby landowners and/or neighbors by building

---

[142] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)(citation modified).
[143] *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)(citing *Arceneaux v. Treen,* 671 F.2d 128, 137 (5th Cir. 1982)).
[144] *Gil Ramirez Group, L.L.C. v. Houston Independent School Dist.*, 786 F.3d 400, 419 (5th Cir. 2015)(quoting *Village of Willowbrook*, 528 U.S. at 564).
[145] *Gil Ramirez Group, L.L.C.*, 786 F.3d at 419.
[146] R. Doc. 1 at p. 9.

gates/floodgates for them, providing/leaving waterfront access for them, and by building the levee wall in the water so as not to destroy the neighbors' property."[147]

"A class-of-one equal-protection claim lies 'where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"[148] "To show an equal protection violation in its 'class of one' claim, [a plaintiff] must prove that (1) it 'has been intentionally treated differently from others similarly situated' and (2) 'there is no rational basis for the difference in treatment.'"[149] Plaintiffs have failed to do so.

As to the first element, "'[t]here is no precise formula to determine whether an individual is similarly situated to comparators.'"[150] Instead, courts consider "'the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision.'"[151]  In *Brown v. Board of Commissioners Fifth Louisiana Levee District*, the Western District of Louisiana noted that "cases involving land-use permits and regulation show that an alleged comparator's lot must be similar in size, scope, and use. If a comparator receives a permit or license and the plaintiff does not, the applications and documentation must be extremely similar."[152]

---

[147] *Id.* at p. 10.

[148] *Integrity Collision Center v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016)(quoting *Village of Willowbrook*, 528 U.S. at 564).

[149] *Hackbelt 27 Partners, L.P. v. City of Coppell*, 661 Fed. Appx. 843, 848 (5th Cir. 2016)(quoting *Village of Willowbrook*, 528 U.S. at 564).

[150] *Hackbelt 27 Partners, L.P.*, 661 Fed. Appx. at 848 (quoting Lindquist v. City of Pasadena, Tex., 669 F.3d 225, 233 (5th Cir. 2012)).

[151] *Id.* (quoting *Lindquist*, 669 F.3d at 234).

[152] *Brown v. Board of Commissioners Fifth Louisiana Levee District*, Civil Action 3:12-CV-00289, 2017 WL 3911001, at *7 (W.D. La. Aug. 1, 2017), *report and recommendation adopted*, Civil Action No. 12-289, 2017 WL 3908916, at *1 (W.D. La. Sept. 6, 2017).

The court in *Brown*, applying the above rationale in the levee context, provided as follows:

> Brown alleges that other landowners along the levee have been treated differently, and submitted aerial pictures of homes with adjacent buildings along the levee. Apparently Brown is contending those landowners have placed buildings on the Levee District's right-of-way. However, Brown has not shown precisely where those structures are located in relation to the right-of-way and the Bondurant fill, has not provided copies of their applications and documentation (or designated which buildings were built without permits), and has not shown those lots are similar in size and use to his. More specifically, Brown has not alleged or shown that he was similarly situated to any other subdivision developer along the levee and that the Levee District undertook different permitting actions for those developers.[153]

Accordingly, that court granted the Levee District's motion for summary judgment.[154] On appeal, the Fifth Circuit affirmed the Western District, noting that "Brown has not demonstrated that he was situated similarly to these landowners or that the other landowners' property is similar to his."[155] The Fifth Circuit further noted that "'mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.' Accordingly, Brown has failed to carry his burden."[156]

Here, Plaintiffs have failed to offer any evidence of how they are similarly situated to their adjacent landowners except for stating that such landowners are "similarly situated[.]"[157] One of the Plaintiffs, Christine Rogers, provided by affidavit

---

[153] *Id.* (internal citations omitted).

[154] *Id.* at *8, *report and recommendation adopted*, Civil Action No. 12-289, 2017 WL 3908916, at *1 (W.D. La. Sept. 6, 2017).

[155] *Brown v. Board of Commissioners Fifth Louisiana Levee District*, No. 17-30808, 726 Fed. Appx. 227, 228 (5th Cir. June 6, 2016).

[156] *Id.* (quoting *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)(internal citations omitted)).

[157] R. Doc. 56 at p. 16; *see* R. Doc. 1.

that "[t]he lack of a gate has disproportionately and uniquely burdened our [p]roperty compared to surrounding parcels that retained controlled access" and that "[o]ur [p]roperty now bears a disproportionate burden compared to surrounding parcels because levee structures, walls, and access restrictions were placed directly across our land."[158] Indeed, similar to the Plaintiff in *Brown*, Plaintiffs have submitted pictures of their property but have not explained how the adjacent landowners are similarly situated in size or in use of their property.[159] In fact, the record suggests that some adjacent landowners may have been using their land for different uses compared to Plaintiffs.[160] Put simply, the record is silent as to the size, scope, and use of Plaintiffs' property compared to that of the alleged similarly situated landowners.[161] Accordingly, the Court finds that Plaintiffs have failed to meet their burden as to the first element.

Even if Plaintiffs' Complaint contained allegations sufficient to satisfy the first element, the Court finds that Plaintiffs have failed to provide any evidence to show that there was no rational basis for LAILD's alleged discriminatory activity. A rational basis review in an equal protection analysis "'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'"[162] Nor does it authorize "the judiciary to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental

---

[158] R. Doc. 56-2 at p. 4.
[159] *See* R. Doc. 56-2 at pp. 6–7.
[160] *See* R. Doc. 47-8 at pp. 8–10.
[161] *See, e.g., Hackbelt 27 Partners, L.P.*, 661 Fed. Appx. at 848 ("The stark differences in size and proposed use make plain that Hackbelt and The Avenue were not similarly situated.").
[162] *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)(quoting *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)).

rights nor proceed along suspect lines."[163] Thus, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."[164] Indeed, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification[,]'"[165] and "the State need not articulate its reasoning at the moment a particular decision is made."[166]

As established by the Fifth Circuit, Plaintiffs, as the challenging parties, have the burden "to negative 'any reasonably conceivable state of facts that could provide a rational basis.'"[167] Plaintiffs have failed to do so. Nowhere in their Complaint or briefing have Plaintiffs attempted to negate conceivable circumstances that could provide a rational basis for LAILD's refusal to build a floodgate, provide waterfront access, and refusal to build a levee in the water.[168] Instead, Plaintiffs merely allege that they have suffered from "disparity of treatment[.]"[169]

It is conceivable such refusals were due to costs or due to the size, elevation, or location of Plaintiffs' property. Additionally, the record suggests that the refusal to provide Plaintiffs a floodgate was due to the potential costs associated with installing the floodgate.[170] This is fatal to Plaintiffs' Equal Protection claim, as the Fifth Circuit has held that "[a]s long as there is *a* conceivable rational basis for the official action,

---

[163] *Id.* (citation modified).
[164] *Id.*
[165] *Id.* at 320 (quoting *Beach Communications, Inc.*, 508 U.S. at 313).
[166] *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 367 (2001).
[167] *Integrity Collision Center*, 837 F.3d at 589 (quoting *Board of Trustees of University of Alabama*, 531 U.S. at 367).
[168] *See* R. Docs. 1, 47, 56, and 58.
[169] R. Doc. 1 at p. 10.
[170] *See* R. Doc. 47-8 at p. 14.

it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not *actually* relied upon by the decisionmakers or that some *other* nonsuspect irrational factors may have been considered."[171] Furthermore, the State, through its "power to control and regulate a levee district in in the performance of its function of providing flood protection," has a "duty to protect citizens from damage by flood."[172] Such duty is "inherent within [the State's] police power[]" and helps further a legitimate government interest.[173]

Because the Court finds that Plaintiffs have failed to proffer evidence raising a genuine issue of material fact with respect to whether LAILD intentionally treated Plaintiffs differently from those similarly situated, the Court could grant LAILD's Motion for Summary Judgment on that sole basis. Nonetheless, the Court still finds that Plaintiffs have failed to negate all conceivable rational bases of LAILD's alleged discriminatory conduct and therefore determines that LAILD is entitled to summary judgment as to Plaintiffs' Equal Protection claim.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that LAILD's Motion to Dismiss for Lack of Jurisdiction under 42 U.S.C. § 1983 and Motion for Summary Judgment[174] is **GRANTED.**

---

[171] *Reid v. Rolling Fork Public Utility Dist.*, 854 F.2d 751, 754 (5th Cir. 1988)(emphasis original).

[172] *Board of Com'rs of Orleans Levee Dist. v. Department of Natural Resources*, 496 So. 2d 281, 289 (La. 1986).

[173] *Id.*; *see Unique Properties LLC v. Terrebonne Parish Consolidated Government*, 150 Fed. Appx. 313, 314 (5th Cir. 2005)("Land use classifications have a rational basis if they are rationally related to a legitimate government interest." (internal quotation marks omitted)).

[174] R. Doc. 47.

37

**IT IS FURTHER ORDERED** that Plaintiffs' Takings claim is **DISMISSED WITHOUT PREJUDICE.**[175]

**IT IS FURTHER ORDERED** that LAILD's Motion to Exclude Plaintiffs' Supplemental Expert Report, Expert Opinions Expressed Therein, the Attachments Thereto and Proposed Expert and for Sanctions[176] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that LAILD's Motion to Exclude Plaintiffs' Expert, Michael Gurtler, or alternatively to Limit his Testimony[177] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that LAILD's Omnibus Motion in *Limine* to Exclude Plaintiffs' Documentary Evidence and Testimony Regarding Same and for Sanctions due to Spoliation of Evidence[178] is **DENIED AS MOOT.**

New Orleans, Louisiana, August 4, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[175] *See In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010)("[I]f the district court had held that it lacked subject matter jurisdiction, it should have entered dismissal without prejudice to allow the Claimants to retry their claims in a court with jurisdiction to hear them.").
[176] R. Doc. 35.
[177] R. Doc. 49.
[178] R. Doc. 59.